UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CITY OF WARREN, MICHIGAN,
ROBERT SLAVKO and RICHARD FOX

                                                   Case No. 10-10234
     Plaintiffs,                             Hon. Lawrence P. Zatkoff

v.

INTERNATIONAL INSURANCE COMPANY
OF HANOVER, LTD., and WESTCHESTER
SURPLUS LINES INSURANCE COMPANY,

     Defendants.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on August 24, 2012

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I. INTRODUCTION**

This matter is before the Court on the parties' cross Motions for Summary Judgment [dkt 80, 81]. The parties have fully briefed the motions. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L. R. 7.1(f)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the reasons set forth below, Defendants' Motion for Summary Judgment is GRANTED; and Plaintiffs' Motion for Summary Judgment is DENIED.

## II. BACKGROUND

### A. OVERVIEW

Plaintiffs City of Warren ("the City"), Robert Slavko and Richard Fox commenced this action against Defendants International Insurance Company of Hannover, Ltd ("IICH") and Westchester Surplus Lines, Inc. ("Westchester")[1] seeking insurance coverage for defense expenses and costs in connection with a settlement reached in July of 2009 with non-party C&R Maintenance, Inc., d/b/a Rizzo Services ("Rizzo"). Rizzo had filed a total of four civil actions against the City ("the Underlying Actions") contending, among other claims, that the City improperly withheld payments for services provided by Rizzo pursuant to a written contract. An Arbitrator eventually found that the City had breached the contract, and awarded Rizzo $6.419 million (the "Award"). Subsequent to the Arbitrator's Award, but before the City made any payment, the City reached a universal settlement agreement with Rizzo for $5.975 million ("the Settlement"). As part of the Settlement, Rizzo and the City agreed to the non-enforcement of the Award.

The City now claims it is entitled to defense costs and indemnification for the Settlement amount from IICH, which provided the City insurance for defense costs ("the Policy"). IICH denied coverage, contending that the Policy contained an exception for costs and amounts paid as a result of a contractual breach by the City or its officials.

### B. THE CONTRACT

On October 22, 2001, the City and Rizzo executed a Solid Waste Transfer Station, Transport, and Disposal Services Contract (the "Contract"). Among other things, the Contract called for Rizzo to pay the City a royalty of $10,000 per month in exchange for use of the City's

---

[1] On May 23, 2012, upon stipulation of the parties, the Court entered an Order dismissing Westchester from this case [dkt 96], leaving IICH as the only remaining Defendant.

transfer station to transfer waste Rizzo picked up for other customers. The Contract also required the City to use commercially acceptable best efforts to install and make operational an additional Direct Dump System ("DDS") by June 30, 2002, though the Contract did not define "Direct Dump System." A dispute arose when Rizzo asserted that the DDS was to include a third compactor to handle yard waste, and complained of increased costs and lost profits because the City had failed to install and make operational the third compactor.

**C. RIZZO I**

After the dispute over the DDS arose, Rizzo began to withhold its $10,000 royalty payments from the City. On May 17, 2005, Rizzo filed its first lawsuit against the City in state court ("Rizzo I"), seeking a declaratory judgment that Rizzo owed no royalties to the City until thirty days after the DDS was installed and fully operational. Rizzo also sought a declaration that the parties could lawfully enter a new ten-year waste hauling contract without letting bids to other contractors. On January 13, 2006, Circuit Judge Deborah Servito issued an Opinion and Order in Rizzo I declining to enter a proposed Consent Judgment because the proposed contract extension would have violated the City's purchasing ordinance.

On May 10, 2006, the City, having taken the position that the DDS was, in fact, fully operational, informed Rizzo that unless it began making the required royalty payments of $10,000, that amount would be withheld from Rizzo's monthly invoices.

In June of 2006, Rizzo delivered documents setting forth its position regarding the Contract to each member of the City Council. Rizzo explained how its business had been adversely impacted by the City's failure to provide a safe and fully operational DDS. Rizzo also included an annotated spreadsheet purporting to show that Rizzo had already incurred increased costs in excess of $4 million as a result of the City's failure to install the DDS. The City took the

opposite position, asserting that it was in compliance with the terms of the Contract and that it was Rizzo that had materially breached the Contract by withholding the royalty payments. In a letter dated August 1, 2006, the City notified Rizzo of the City's position and further announced that unless Rizzo made the royalty payments, the City would immediately begin withholding $28,620.69 monthly until the Contract expiration on October 22, 2008.

On August 18, 2006, Rizzo replied to the City's letter and stated again that the City, and not Rizzo, was in material breach of the Contract. The City proceeded to withhold $28,620.69 from Rizzo's monthly invoices for services rendered under the Contract. On March 13, 2007, after efforts toward settlement failed, Rizzo I was dismissed by stipulation of counsel, without prejudice.

### E. RIZZO II

On October 17, 2007, Rizzo filed suit in U.S. District Court against the City and two of its employees—Robert Slavko and Richard Fox—seeking damages in excess of $6 million ("Rizzo II"). Rizzo II was assigned to Judge Nancy Edmunds. Rizzo sought damages for: violation of 42 U.S.C. §1983 (Count I); Breach of Contract (Count II); Common Law Conversion (Count III); Statutory Conversion (Count IV); Conspiracy (Count V); and Declaratory Judgment (Count VI). On November 28, 2007, all but Counts I and V were dismissed because the court declined to exercise supplemental jurisdiction over Rizzo's state-law claims.

In Count I, Rizzo alleged that, by exercising its First Amendment right to free speech by filing Rizzo I and by "notifying members of the Warren City Council, the Mayor of Warren, the Circuit Court for Macomb County and others that the City of Warren was not performing its contractual obligations under the Contract . . . the Defendants had retaliated against Rizzo . . .

4

[by] . . . withholding funds . . . in excess of $100,000 in violation of 42 U.S.C. § 1983." In Count V, Rizzo alleged that after "Plaintiff exercised its well established and well-known First Amendment rights, Defendants Slavko and Fox, Councilwoman Kathy Vogt, City attorney George Constance, and, perhaps others not currently known to Rizzo, discussed, planned and executed the retaliation against Rizzo [] by causing over one hundred thousand dollars belonging to Rizzo to be wrongfully retained by the City[.]"

**F. RIZZO III**

On December 3, 2007, Rizzo filed a third lawsuit in Macomb County Circuit Court ("Rizzo III"). The parties were identical to those in Rizzo II. The Counts that had been dismissed in Rizzo II—Breach of Contract, Common Law Conversion, Statutory Conversion and Declaratory Judgment—were re-alleged verbatim in Rizzo III. In Count IV of Rizzo III, Rizzo also re-alleged the Conspiracy Count pleaded in Rizzo II. Many of the "Common Allegations" in Rizzo II were also re-alleged verbatim in Rizzo III, including claims by Rizzo that the City had wrongfully withheld funds from Rizzo in retaliation for the exercise of its First Amendment rights to petition City Council.

Rizzo III was amended on February 12, 2008 to assert additional Counts VI (Breach of Contract – City of Warren State Fees); VII (Breach of Contract – Other Services); and VIII (Unjust Enrichment).

**G. RIZZO IV − DEMAND FOR ARBITRATION**

Pursuant to an arbitration clause contained in the Contract, on February 14, 2008, Rizzo filed a Demand for Arbitration with the American Arbitration Association ("Rizzo IV"). The Demand for Arbitration sought a determination that the City materially breached the Contract and a determination that the Contract be immediately terminated. It also sought a determination

5

that "the [City pay Rizzo] for all losses it has incurred due to the [City's] actions, including consequential damages, and all equitable and legal relief permitted by Michigan law."

### H. MOTION TO COMPEL ARBITRATION IN RIZZO III

On March 27, 2008, Rizzo filed a Motion to Compel Arbitration in Rizzo III. The Motion sought an order that "all claims involving the Contract should be transferred to and made a part of [the Arbitration in Rizzo IV,] arguing that "Michigan law favors keeping all issues in a single forum." On June 6, 2008, Macomb County Circuit Judge Mark Switalski issued an Opinion and Order ("the Switalski Order") in Rizzo III, finding that "the claims for common law conversion, statutory conversion and conspiracy all stem from the breach of contract claim," and granting Rizzo's Motion to move the entire case into Arbitration.

### I. RIZZO IV AMENDED

On June 18, 2008, attorneys for Rizzo and the City met with the Arbitrator in Rizzo IV. The parties agreed that, in exchange for the City's agreement to refrain from withholding invoice payments over the remaining four months of the Contract, Rizzo would not seek to terminate the Contract and would continue to provide services. It was further agreed that the parties made no concessions or admissions by virtue of such agreement, and that the royalty issue would be litigated in Arbitration along with the other claims.

### J. IICH'S DENIAL

On December 4, 2008, the City contacted IICH's TPA, Specialty Claims Service, and requested a coverage opinion. In response, IICH's third-party Administrator, Specialty Claims Service, wrote to Plaintiffs on May 19, 2009, and denied coverage. In addition to late notice and other Policy defenses, IICH relied upon Section LC.18.e of the Policy, which provides that the Policy "does not apply to . . . Public Officials Errors and Omissions arising out of . . . failure to

perform or breach of a contractual obligation" (hereinafter "Section 18(e)"). IICH reserved the right to change position "in the event of a change of circumstances or should new information come to light."

**K. ARBITRATION HEARING AND AWARD**

Rizzo IV proceeded and the Arbitrator heard testimony on January 19–23, March 30–April 4, and April 6, 2009. On June 1, 2009, the parties filed extensive Post Arbitration Briefs. On June 19, 2009, the Arbitrator issued his decision. The Arbitrator awarded Rizzo $6,419,580 based on the City's breach of the Contract:

> [The City] breached its contract with [Rizzo] by failing to use commercially acceptable best efforts to install and make operational [the DDS] on or before June 30, 2002.
>
> \*\*\*
>
> Since I find that the [DDS] was never operational, I find that pursuant to Section 2.03 of the contract, no royalty payments were ever due the City of Warren. I find that the City of Warren wrongfully withheld royalty payments in the amount of $683,276.00 and award [Rizzo] this amount.

**N. SETTLEMENT**

On June 30, 2009, the Settlement was reached by Rizzo and the City and was placed on the record in Rizzo II. On July 2, 2009, the City Council passed a Resolution to Approve Settlement Agreement which referred to "a proposed global resolution and settlement of all claims asserted in the . . . federal and state actions, on an unallocated basis." The Resolution did not, however, mention the Arbitration in Rizzo IV or the Award.

On July 16, 2009, a Stipulated Order for Dismissal with Prejudice was entered in Rizzo II. The City and Rizzo attempted to arrange for the withdrawal of the City's Demand for Arbitration in Rizzo IV, but were told by the Arbitrator that they should instead agree amongst themselves, as part

of their Settlement, that the Award would not be enforced. The City and Rizzo appear to have relied on this when placing the Settlement on the record.

## P. THE INSTANT CASE

Plaintiffs filed the instant case with the Court on January 19, 2010. Plaintiffs' Complaint contains the following Counts: Count I – Declaratory Judgment; Count II – Breach of Contract; Count III – Breach of Implied Covenant of Good Faith and Fair Dealing; Count IV – Violation of Mich. Comp. Laws § 500.2006(1). The parties subsequently filed the instant cross motions for summary judgment: the City claims that IICH improperly denied coverage under the Policy for the City's costs in defending against and ultimately settling Rizzo's claims; IICH asserts that the Policy excluded coverage arising out of the City's breach of its contractual duties, and that such a breach occurred when the City failed to install the DDS and withheld invoice payments from Rizzo.

## III. LEGAL STANDARD

When considering a motion for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or;
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).

The moving party bears the initial burden of demonstrating the absence of any genuine dispute as to a material fact, and all inferences should be made in favor of the nonmoving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party discharges its burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### IV. ANALYSIS

#### A. COUNT I – DECLARATORY JUDGMENT

The City argues that their costs in defending against and settling Rizzo's state and federal actions were covered by the Policy. As discussed below, however, the Court finds that IICH was not obligated to indemnify or pay costs to the City because the City's responsibility to pay such expenses arose from its failure to perform a contractual obligation.

*1. The Arbitrator's Findings*

As an initial matter, the Court notes the findings of the Arbitrator in awarding Rizzo $6.419 million in damages. While not an issue before this Court, the question of whether and to what extent the City breached the Contract with Rizzo is significant to the Court's determination

9

in this case, since the Policy contains an express exception to coverage for claims arising out of the City's breach of contractual obligations. To that end, the Court relies on the Arbitrator's determination that the City did, in fact, breach the Contract on two occasions.

First, the Arbitrator found that the City breached by "failing to use commercially acceptable best efforts to install and make operational the [DDS] on or before June 30, 2002." Additionally, the Arbitrator determined a second breach occurred when the City "with[held] $683,276.00 [from Rizzo's invoices]." Although Rizzo and the City, via the Settlement, agreed to not seek enforcement of the Award, the Court will nevertheless "afford great deference to the arbitrator's decision," *Equitable Res., Inc. v. United Steel,* 621 F.3d 538, 545 (6th Cir. 2010), because the underlying "question of contract interpretation [was] for the arbitrator." *United Steelworkers of Am. v. Am. Mfg. Co.*, 363 U.S. 564, 568 (1960). Had a court, giving the requisite deference to the Arbitrator, entered final judgment on the Award,[2] the City's obligation to pay Rizzo damages in the amount of $6.419 million would not have been covered by the Policy, since it is beyond dispute that the Policy does not apply to the City's breach of a contract. As such, for purposes of this Opinion and Order, the Court will adopt the Arbitrator's finding that the City breached the Contract.

    *2. The Policy Does Not Apply to the City's Breach of a Contractual Duty*

In addition to its state claims for breach of contract, conversion, and declaratory relief, Rizzo brought a federal action against the City under 42 U.S.C. § 1983 claiming retaliation and

---

[2] Although not dispositive to the Court's decision in this matter, the Contract appears to have required a court of competent jurisdiction to enter judgment upon an arbitrator's award:

> Step 3: Arbitration – In the event that either party disputes the claims set forth in the Notice of Termination, (whether said Notice references a material or a non-material breach) the parties shall resolve the dispute, controversy or claim finally and exclusively through a process of binding arbitration before a single arbitrator in accordance with the Commercial Arbitration Rules of the American Arbitration Association then in effect, and *judgment upon the award of the Arbitrator may be entered in any Court having jurisdiction of the parties*[.]

conspiracy to retaliate. The City appears to argue, however, that these claims were separate and distinct from Rizzo's breach of contract claims, on which the Arbitrator ruled in Rizzo's favor. The City further claims that, as such, IICH was required to pay all claims expenses incurred by the City in connection with these federal claims, including the Settlement amount. The Court, however, finds the City's purported distinction between the federal claims and the breach of contract claim illusory at best. Rather, Rizzo's state and federal actions arose out of the City's "failure to perform or breach of a contractual obligation," and were thus excluded from coverage under the Policy.

According to its terms, the Policy "does not apply to . . . [Wrongful Acts] . . . arising out of . . . failure to perform or breach of a contractual obligation[.]" The term "Wrongful Act" is defined by the Policy as "any actual or alleged error or misstatement, omission, act of neglect or breach of duty or actual or alleged violation of federal or state civil rights." The Policy further provides that "[a]ny errors or omissions arising out of the same cause, event or circumstance . . . shall be deemed as arising from the same Wrongful Act." Before claiming in any state or federal action that the City breached the Contract, Rizzo first notified the City of its failure to install and make operational the additional DDS. Rizzo also brought this alleged failure to the City Council's attention. Although it appears that Rizzo did not send the City a Notice of Breach[3] or seek to terminate the Contract on account of this, Rizzo's claims unquestionably arose out of the City's "failure to perform a contractual obligation," since the Contract required the City to install and make operational the DDS, and Rizzo claimed the City failed to perform this requirement. It

---

[3] The Contract required the City and Rizzo to give the opposing party notice of any breach of the Contract:

> Failure on the part of either party to fully perform the provisions of this Article will be deemed a material breach of this Contract . . . . In the event that[Rizzo] determines that the terms and conditions of this Contract have not been met by the City and that the City is in breach of this Contract, then [Rizzo] shall [mail to the City a Notice of Breach specifying the nature of the breach.]

11

was this failure to perform that served as the underlying cause of all of Rizzo's actions against the City.

Thereafter, the City committed a second breach by withholding money it owed to Rizzo, money the City claims was owed by Rizzo as royalties, based on the City's position that the DDS *was* operational. In addition to filing a breach of contract claim for this second breach in Rizzo IV, Rizzo also filed § 1983 claims based on these operative facts, alleging that the City and its officials conspired to commit the breach in an effort to retaliate against Rizzo for making its initial claims against the City. This purported retaliation, however, nevertheless arose out of the City's "failure to perform a contractual obligation," as it would never have occurred absent the City's failure to install and make operational the DDS. Although Rizzo brought the § 1983 claims against the City under different labels, the fact remains that such claims arose out of Rizzo's initial claim that the City "failed to perform a contractual obligation" by not installing the DDS—triggering exclusion 18(e) under the Policy.

The Court also notes that allowing the City to make a deal to avoid payment and instead impute liability on IICH raises a number of concerns. The City should not be able to circumvent its liability under the Policy via an after-the-fact settlement with Rizzo on an "unallocated" basis (*i.e.*, that payment under the Settlement would not be made in satisfaction of any particular claim by Rizzo). This is especially true when considering the City's obligation to pay the Award was a key bargaining chip in the Settlement negotiations. Notably, during the Settlement Conference, the City informed Rizzo that there must be a "global" settlement for less than $6 million and that, for insurance reasons, such "global" settlement must be on an "unallocated" basis. *See* Def. Resp. Br. at 19. The City asserted that it would not settle without language in the Settlement agreement reflecting these requirements. *Id.* Agreeing with a non-party to the Policy, however,

12

does not change the fact that, for purposes of said Policy, the City was conclusively found by the Arbitrator to have breached the Contract on at least two occasions. The City's breach gave rise to Rizzo's subsequent claims against the City, irrespective of whether the Arbitrator's Award was ever ultimately enforced. By merely settling with Rizzo, the City should neither be allowed to nullify arbitration by which it agreed to be bound nor, to a further extent, circumvent the terms of its insurance contract with IICH.

For these reasons, the Court finds that the claims for which the City seeks insurance coverage were based on acts that "[arose] out of . . . [the City's] failure to perform . . . a contractual obligation"—claims therefore barred by Section 18(e) of the Policy.

## B. COUNTS II – IV

Because the Court has found that IICH had no obligation to indemnify the City's costs, Counts II – IV are rendered moot.

## V.  CONCLUSION

Accordingly, and for the reasons set forth above, it is HEREBY ORDERED that Defendants' Motion for Summary Judgment [dkt 80] is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Summary Judgment [dkt 81] is DENIED.

IT IS SO ORDERED.

Date:  August 24, 2012

                                              s/Lawrence P. Zatkoff
                                              LAWRENCE P. ZATKOFF
                                              U.S. DISTRICT JUDGE